Approved: ______________________
RYAN W. ALLISON
Assistant United States Attorney

Before: THE HONORABLE ANDREW E. KRAUSE
United States Magistrate Judge
Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>ANDREW HUNT,<br><br>Defendant. | **COMPLAINT** 23MJ00092<br><br>Violations of<br>18 U.S.C. §§ 922(g)<br>924(c); 21 U.S.C. § 841<br><br>COUNTY OF OFFENSES:<br>ORANGE |

SOUTHERN DISTRICT OF NEW YORK, ss.:

ERIC DORNBUSCH, being duly sworn, deposes and says that he is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), and charges as follows:

**COUNT ONE**

(Unlawful Possession of a Firearm)

1. On or about January 2, 2023, in the Southern District of New York and elsewhere, ANDREW HUNT, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess a firearm, to wit, a loaded SIG Sauer P226 semi-automatic pistol, s/n U391693, which previously had been shipped and transported in interstate or foreign commerce.

(Title 18, United States Code, Section 922(g)(1).)

**COUNT TWO**

(Possession with Intent to Distribute Cocaine and Fentanyl)

2. On or about January 2, 2023, in the Southern District of New York and elsewhere, ANDREW HUNT, the defendant,

intentionally and knowingly possessed with the intent to distribute a controlled substance in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that ANDREW HUNT, the defendant, possessed with the intent to distribute was a substance that contained a detectable amount of cocaine and a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code,
Sections 841(a)(1) and (b)(1)(C).)

**COUNT THREE**

(Possession of a Firearm in Furtherance of a Drug Trafficking Crime)

4. On or about January 2, 2023, in the Southern District of New York and elsewhere, ANDREW HUNT, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the possession of a controlled substance with intent to distribute charged in Count Two of this Complaint, knowingly did use and carry a firearm, and in furtherance of such crime, did possess a firearm.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

5. I have been a Special Agent with the ATF since December 2009. Before joining ATF, I was a U.S. Federal Air Marshal for approximately three years, and prior to that I was a Background Investigator for the U.S. Department of Defense for five years. During my time in law enforcement, I have participated in numerous firearms, ammunition, and narcotics investigations. I base this affidavit on my experience and training, my participation in this investigation, my conversations with other law enforcement officers, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during the investigation. Where the contents of documents or the actions, statements, or conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6. Based on my communications with law enforcement officers from the ATF and the Town of Woodbury Police Department (the "TWPD"), my participation in this investigation, and my review of reports and records, I have learned, among other things, the following, in substance and in part:

a. At approximately 12:50 p.m. on January 2, 2023, in the vicinity of the Woodbury Common Outlets in Woodbury, New York, two TWPD officers pulled over a White Honda CR-V bearing a particular New York license plate number (the "Vehicle") that had been reported stolen by the Ulster County Sherriff's Office.

b. The TWPD officers approached the Vehicle and observed that it was occupied by four individuals: a female (the "Driver") in the driver's seat; one male in the front passenger's seat; and two other males in the rear passenger seats.

c. The TWPD officers requested identification information from the Vehicle's occupants and identified the Driver as the subject suspected of stealing the Vehicle. The Driver was arrested and placed in a patrol vehicle.

d. The TWPD officers also identified the male in the front passenger's seat as ANDREW HUNT, the defendant. The TWPD officer who asked for HUNT's identification information noticed that HUNT appeared visibly upset and kept reaching inside a black bag (the "Satchel") located near his waist.

e. After the Driver was placed in a law enforcement patrol car, a TWPD officer instructed the passengers of the Vehicle, including HUNT, to exit the vehicle and advised that they would be frisked for officer safety. The officer repeatedly commanded HUNT to exit the Vehicle, but HUNT continually refused and instead kept interacting with the Satchel.

f. Eventually, HUNT placed the Satchel on the floor in front of the front passenger's seat, stepped out of the Vehicle, and was frisked. During this frisk, a TWPD officer located in HUNT's right jacket pocket U.S. currency and a small plastic bag with a white substance (the "Substance") that appeared based on the TWPD officers' training and experience to be narcotics packaged for distribution. HUNT was then placed under arrest and put into a patrol car.

g. TWPD officers then began an inventory search in preparation for impounding the Vehicle. During this search, law enforcement officers located the Satchel sitting partially open on the floor directly in front of the front passenger's seat where

HUNT had been sitting. In the Satchel, officers found a loaded SIG Sauer P226 semi-automatic pistol, s/n U391693 (the "Firearm"), inside a holster.

h. TWPD officers brought HUNT and the Driver to the TWPD station. Upon his arrival at the TWPD station, HUNT was read his *Miranda* rights. During processing, HUNT spontaneously stated, in substance and in part, that the Satchel was not his, and that he was unsure whose it was, as it was not his vehicle. HUNT also stated, in substance and in part, that he just put his money inside the Satchel to keep it safe.

i. After returning to the TWPD station from the scene of the stopped Vehicle, a TWPD officer conducted field tests of the Substance. Those tests came back positive for the presence of cocaine and the presence of fentanyl. Based on these tests, I believe the Substance is cocaine laced with fentanyl.

j. A law enforcement officer at the TWPD station also conducted a further inventory search of the Satchel and located inside it a bank statement, a paycheck statement, and mail addressed to "Andrew L. Hunt" and "Andrew Hunt" at the same address HUNT provided to TWPD officers during processing. A different address was listed on HUNT's state identification card.

k. At the TWPD station, while awaiting further processing, HUNT stated spontaneously in the presence of two TWPD officers, in substance and in part: "Didn't know she stole the fucking car but it's my gun, shit don't make sense."

l. Law enforcement officers brought HUNT into another room to interview him. The officers read HUNT his *Miranda* rights again, and HUNT agreed to speak with the officers. During this interview, which was recorded, HUNT stated, in substance and in part, that he distributes narcotics to individuals, including the Driver, and that he occasionally asks the Driver to drive him to various locations in exchange for narcotics. HUNT further stated, in substance and in part, that he contacted the Driver earlier that day to arrange one such drive-for-narcotics exchange, and that the Driver had picked up HUNT in the vicinity of the intersection of Broadway and Lutheran Streets in Newburgh, New York. During this interview, HUNT denied that the Firearm belonged to him.

7. Based on my training and experience, I know that when a narcotics distributor possesses both a loaded firearm and narcotics packaged for distribution in the presence of an individual who regularly purchases narcotics, this indicates that

the narcotics distributor possessed the firearm in connection with drug trafficking activities. I also know based on my conversations with law enforcement officers that the vicinity of Broadway and Lutheran Streets in Newburgh, New York, is a location where narcotics sales and shootings are common, and that known narcotics distributors who operate in the vicinity of Broadway and Lutheran Streets often carry firearms for their protection and in furtherance of their narcotics businesses.

8. In addition to my duties as a Special Agent, I am an interstate nexus expert for the ATF. I reviewed the Firearm, and I concluded that the Firearm was manufactured outside of New York State.

9. I have reviewed criminal history records pertaining to ANDREW HUNT, the defendant, which show that, on or about April 13, 2015, HUNT pleaded guilty in Orange County Court to first-degree robbery, in violation of New York Penal Law § 160.15(2), which is punishable by imprisonment for a term of more than one year, and was sentenced on May 20, 2015, principally to seven years' imprisonment and five years' post-release supervision.

WHEREFORE, the deponent respectfully requests that ANDREW HUNT, the defendant, be arrested and imprisoned or bailed, as the case may be.

*/s/ Eric Dornbusch*
(by AEK, with permission)

ERIC DORNBUSCH
SPECIAL AGENT
BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES

Sworn to me through the transmission of this Complaint by reliable electronic means (*i.e.*, FaceTime), pursuant to Federal Rule of Criminal Procedure 4.1, this sixth day of January, 2023

Andrew Krause

THE HONORABLE ANDREW E. KRAUSE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK